USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/18/19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HILDELBERTO LARA, *on behalf of all other employees similarly situated*,

Plaintiff,

-against-

AIR SEA LAND SHIPPING & MOVING INC., *doing business as* AIR SEA LAND GROUP OF COMPANIES, *et al.*,

Defendants.

19-CV-8486 (PGG) (BCM)

**ORDER**

**BARBARA MOSES, United States Magistrate Judge.**

The Court has received and reviewed the parties' joint letter dated November 5, 2019 (Dkt. No. 12), seeking approval of their proposed Negotiated Settlement Agreement & Release (Agreement) (Dkt. No. 12-1) pursuant to *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015). Defendants have agreed to pay a total of $19,000 to settle plaintiff's claims, brought under the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201 *et seq.*, and New York Labor Law (NYLL) §§ 190 *et seq.* and 650 *et seq.*, arising out of plaintiff's past employment as a mover for defendants. Ag. ¶ 1. Of that amount, $6,676.67 will be paid to plaintiff's counsel in attorney's fees and costs. Ag. ¶ 2.1(B).

### The Agreement

The Agreement includes a one-way release, limited to wage and hour claims, whereby plaintiff "release[s] and forever discharge[s]" the "releasees" from:

> [A]ny and all claims, known and unknown, which RELEASORS have alleged in the Complaint including, but not limited to, any and all wages and hour claims arising under the Fair Labor Standards Act, the New York Labor Law, and the Wage Theft Prevention Act, as well as claims for minimum wages, overtime, commissions, unpaid wages, whether based on common law or otherwise, and all claims for improper deductions, travel time, spread of hours pay, bonuses, expenses, reimbursements, gratuities, tip credits, tip allowances, service charges, retained gratuities and retaliations during Plaintiff's employment with Defendants and any other compensation or wages.

Ag. ¶ 1. The Agreement defines "Releasees" to mean:

> (i) Rienzie Fernando, in his individual and corporate capacities and his heirs, executors, administrators, attorneys, successors and assigns; (ii) Vajira Mendis, in her individual and corporate capacities and his heirs, executors, administrators, attorneys, successors and assigns; and (iii) Air Sea Land Shipping & Moving their parent company, affiliates, subsidiaries, divisions, related entities, predecessors, successors, and assigns and their current and former owners, principals, members, shareholders, partners, officers, directors, trustees, managers, employees, attorneys, insurers, and agents, in their individual, representative, and business capacities.

*Id.*

According to the parties' joint letter, "the agreement does not contain a confidentiality or nondisparagement clause that may 'run afoul of the purposes of the FLSA and the public's independent interest in assuring that employees' wages are fair.'" Joint Ltr. at 3 (quoting *Flood v. Carlson Restaurants Inc.*, 2015 WL 4111668, at *1 (S.D.N.Y. July 6, 2015)). Nonetheless, the Agreement contains precisely those clauses, immediately next to one another, on page 5:

> Non-Disparagement. Neither party shall make any statements which in any way could disparage the other. Counsel at Hang & Associates, PLLC agree that they will not make any disparaging comments about the Defendants.

> Confidentiality. Plaintiff and his Counsel agree to keep the existence and terms of this Agreement, the negotiations leading to this Agreement, and the nature of this proceeding confidential. This includes, but is not limited to, refraining from making or submitting any press releases or appearing or participating in any media regarding this matter.

Ag. ¶¶ 7-8.

The Agreement also contains a severability clause, which provides that "[i]f any provision of this Agreement is held by a court of competent jurisdiction to be illegal, void or unenforceable, such provision shall have no effect; however, the remaining provisions shall be enforced to the maximum extent possible." Ag. ¶ 5.

2

## Analysis

The Court concludes that the economic terms of the Agreement, including the fee award, are fair and reasonable as required by *Cheeks*, 796 F.3d at 206. Plaintiff worked as a mover for defendants' shipping and moving business for approximately six years, and, despite working "52.5 hours to 63 hours per week" during the four-month "summer season" each year, was paid a fixed weekly rate of $520, in cash, and no overtime pay. Compl. (Dkt. No. 1) ¶¶ 24-26. The parties state that if plaintiff were "to prevail on all his claims, excluding liquidated damages, his recovery would total approximately $59,725.00." Joint Ltr. at 1-2. However, "[i]f the case were to proceed to trial, Defendants argue that they would be able to demonstrate via documentary evidence and non-party discovery that Plaintiff worked significantly fewer days than alleged." *Id*. It thus appears that damages would be vigorously contested, making a compromise figure appropriate for settlement.

The attorney's fee award is also fair. Plaintiff's attorneys will receive $6,676.67 in fees and costs, of which $515 will reimburse them for costs, leaving $6,161.67 for their attorney's fee award. That sum represents approximately 33% of the net settlement payment of $18,485 (gross settlement payment less costs), which is within the range ordinarily approved in this District. *See Martinez v. SJG Foods LLC*, 2017 WL 4676828, at *2 (S.D.N.Y. Oct. 16, 2017) (quoting *Meza v. 317 Amsterdam Corp.*, 2015 WL 9161791, at *2 (S.D.N.Y. Dec. 14, 2015)) ("When using a percentage of the fund approach, 'courts regularly approve attorney's fees of one-third of the settlement amount in FLSA cases.'"); *Run Guo Zhang v. Lin Kumo Japanese Rest. Inc.*, 2015 WL 5122530, at *1 n.1 (S.D.N.Y. Aug. 31, 2015) ("attorneys' fees, when awarded on a percentage basis, are to be awarded based on the settlement net of costs"). I have also reviewed counsel's time records, which show a lodestar of $8,395. Joint Mot. Ex. B. These records do not call into question the reasonableness of the requested fee award.

3

The non-economic terms of the Agreement are also fair and reasonable under the *Cheeks* standard, with three exceptions: the release, the confidentiality clause, and the non-disparagement clause. *Cheeks* warned about abusive settlements containing "an overbroad release that would 'waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues.'" 796 F.3d at 206 (quoting *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 181 (S.D.N.Y. 2015)). In this case, the release is substantively narrow, extending only to the claims that plaintiff "alleged in the Complaint," including wage claims. Ag. ¶ 1. Thus, there is no risk that the plaintiff is unintentionally releasing claims other than wage and hour claims. However, when combined with the broad definition of "Releasees," the release – read literally – would have the undoubtedly unintended effect of releasing any wage and hour claims that plaintiff had against a wide range of unidentified individuals and business only tenuously affiliated with defendant Air Sea Land Shipping & Moving Inc. (Air Sea Land), even if those claims were unrelated to plaintiff's work as a mover for that company between 2013 and 2019. *See Garcia v. Good for Life by 81, Inc.*, 2018 WL 3559171, at *3 (S.D.N.Y. July 12, 2018) (declining to approve an FLSA settlement agreement where plaintiffs released all persons and entitles "related [to] or affiliated" with defendants, including otherwise undefined "family members," as well as all of the affiliates' employees).[1]

---

[1] By way of example, plaintiff in this case could be deemed to have released wage and hour claims against an employer for whom he worked after he left defendants' moving and shipping business – in a wholly different business – if that employer happened to have formerly been a member, shareholder, employee, or agent of defendant Air Sea Land. Ag. ¶ 1 (defining Releasees to include Air Sea Land's "parent company, affiliates, subsidiaries, divisions, related entities, predecessors, successors, and assigns and their current and former owners, principals, members, shareholders, partners, officers, directors, trustees, managers, employees, attorneys, insurers, and agents, *in their individual, representative, and business capacities*") (emphasis added).

4

The Court presumes that the goal of the parties here was more modest, and that their intention was that plaintiff would release Air Sea Land's "parent company, affiliates, subsidiaries, divisions, related entities, predecessors, successors, and assigns and their current and former owners, principals, members, shareholders, partners, officers, directors, trustees, managers, employees, attorneys, insurers, and agents" *in their capacities as such.*

The Agreement's confidentiality and non-disparagement clauses are also improper. As this Court and other courts have frequently explained – including in cases counseled by Hang & Associates, PLLC – "[c]onfidentiality clauses are contrary to public policy and the remedial purposes of the FLSA because they prevent the spread of information about FLSA actions to other workers . . . who could then use that information to vindicate their own statutory rights," and "[n]on-disparagement clauses, although typically more limited than confidentiality clauses, can be objectionable in FLSA cases for the same reasons." *Weng v. T&W Rest., Inc.*, 2016 WL 3566849, at *4 (S.D.N.Y. June 22, 2016) (internal citations, quotation marks, and brackets omitted). *Accord Gallardo v. PS Chicken Inc.*, 2018 WL 1251980, at *2 (E.D.N.Y. Mar. 8, 2018); *Bao Cheng Fu v. Mee May Corp.*, 2017 WL 2172910, at *2-3 (S.D.N.Y. Mar. 31, 2017). Indeed, the parties' joint letter acknowledges the impropriety of both clauses, Joint Ltr. at 3, while failing even to acknowledge – much less to justify – their inclusion in the parties' Agreement.

Rather than withhold approval of the parties' settlement on the ground that the release, confidentiality, and non-disparagement clauses are not fair to the plaintiff, however, the Court relies on the Agreement's severability clause, Ag. ¶ 5, as follows:

- Release: Paragraph 1(iii) is modified to STRIKE the word "individual" such that the clause now reads ". . . employees, attorneys, insurers, and agents, in their ~~individual,~~ representative~~, and business~~ capacities . . ."

5

- Non-Disparagement: Paragraph 7 is STRICKEN.
- Confidentiality: Paragraph 8 is STRICKEN.

## Conclusion

The Court finds that the Agreement, as modified, is fair and reasonable as required by *Cheeks*, 796 F.3d 199, and APPROVES the Agreement AS MODIFIED in the manner set forth above.

The Court will separately so-order the parties' proposed Stipulation and Order of Dismissal with Prejudice. (Dkt. No. 12-2.)

Dated: New York, New York
November 18, 2019

**SO ORDERED.**

**BARBARA MOSES**
**United States Magistrate Judge**